**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RODNEY BARNETT and HEATHER WOLFF,
individually, and as a representative of a Class of
Participants and Beneficiaries of The Iron Mountain
Companies 401(k) Plan,

        Plaintiffs,

        v.

IRON MOUNTAIN INCORPORATED and
RETIREMENT PLAN COMMITTEE OF IRON
MOUNTAIN INCORPORATED,

        Defendants.

Case No.  1:24-cv-11239-GAO

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    I.    PLEADINGS .............................................................................................................. 2

    II.   MEDIATION AND SETTLEMENT…………………………………………………….....2

    III.  OVERVIEW OF SETTLEMENT TERMS................................................................... 3

        A.   The Settlement Class ...................................................................................... 3

        B.   Monetary Relief ............................................................................................... 4

        C.   Release of Claims ........................................................................................... 4

        D.   Class Notice and Settlement Administration................................................... 5

        E.   Attorneys' Fees and Administrative Expenses ............................................... 5

        F.   Review by Independent Fiduciary .................................................................. 6

ARGUMENT ........................................................................................................................ 6

    I.    STANDARD OF REVIEW .......................................................................................... 6

    II.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT ..................... 7

        A.   The Settlement Is The Product Of Arm's-Length Negotiations...................... 7

        B.   The Settlement Was Reached After Informed Negotiations............................ 8

        C.   The Proponents Of The Settlement Are Highly Experienced In Similar
            ERISA Litigation ............................................................................................ 9

        D.   The Settlement is Fair, Reasonable, and Adequate to Warrant Sending Notice to the
            Settlement Class ............................................................................................ 10

    III.  THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.................. 11

        A.   The Proposed Settlement Class Satisfies Rule 23(a)..................................... 12

        B.   The Proposed Class Satisfies Rule 23(b)(1) ................................................. 16

CONCLUSION ..................................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................. 20

# TABLE OF AUTHORITIES

Cases

*Abbott v. Lockheed Martin Corp.*,
   2015 WL 4398475 (S.D. Ill. July 17, 2015)..................................................................... 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................13, 15

*Andrews v. Bechtel Power Corp.*,
   780 F. 2d 124 (1st Cir. 1985)........................................................................................ ..15

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
   No. 17-cv-00563, Dkt. 211 (May 20, 2020),
   *approved* 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020)...................................................... ..8

*Beesley v. Int'l Paper Co.*,
   No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014).................................................... 10

*City P'ship. v. Atlantic Acquisition Ltd.*,
   100 F.3d 1041  (1st Cir. 1996)........................................................................................ ..8

*Dolins v. Cont'l Cas. Co.*,
   No. 1:16-cv-08898, Dkt. 122-1 (N.D. Ill. Aug. 6, 2018) ............................................... .9

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156 (1974) ...................................................................................................... 11

*George v. Kraft Foods Global, Inc.*,
   270 F.R.D. 355 (N.D. Ill. 2010) ................................................................................... .15

*Gordon v. Johnson*,
   300 F.R.D. 31 (D. Mass. 2014)..................................................................................... .13

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) .....................................................................7, 13, 18

*In re Credit Suisse-AOL Secs. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008)..................................................................................... 14

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
   275 F.R.D. 382 (D. Mass 2011)..................................................................................... 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ............................................................................................ 8

*In re IKON Office Solutions,*
191 F.R.D. 457 (E.D. Pa. 2000) ........................................................................ 17

*In re Lupron Mktg. and Sales Practices Litig.,*
345 F. Supp. 2d 135 (D. Mass. 2004) ................................................................. 8

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.,*
270 F.R.D. 45 (D. Mass. 2010) .......................................................................... 7

*In re Neurontin Mktg. & Sale Practices Litig.,*
244 F.R.D. 89(D. Mass. 2007) ......................................................................... 14

*In re Rite Aid Corp. Sec. Litig.,*
146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................. 8

*In re Schering Plough ERISA Litigation,*
589 F.3d 585 (3d Cir. 2009) ........................................................................ 14, 17

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,*
2018 WL 2183253  (N.D. Cal. May 11, 2018) ................................................... 8

*Karpik v. Huntington Bancshares Inc.,*
2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ..................................................... 9

*Kinder v. Koch Indus., Inc.,*
2021 WL 3360130  (N.D. Ga. July 30, 2021) ..................................................... 9

*Koerner v. Copenhaver,*
2014 WL 5544051 (C.D. Ill. Nov. 3, 2014) ...................................................... 10

*LaRue v. DeWolff, Boberg & Assoc., Inc.,*
552 U.S. 248 (2008) ......................................................................................... 18

*Matamoros v. Starbucks Corp.,*
699 F.3d 129 (1st Cir. 2012) ............................................................................ 15

*Mullane v. Central Hanover Bank and Trust Co.,*
339 U.S. 306 (1950) ......................................................................................... 11

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) ......................................................................................... 17

*Payne v. Goodyear Tire & Rubber Co.,*
216 F.R.D. 21 (D. Mass. 2003) ........................................................................ 13

*Reid v. Donelan,*
297 F.R.D. 185 (D. Mass. 2014) ...................................................................... 13

*Rozo v. Principal Life Ins. Co.*,
　　2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) .................................................................9

*Sacerdote v. New York Univ.*,
　　328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021) ...........................9

*Schulte v. Fifth Third Bank*,
　　805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................................10

*Seiden v. Nicholson*,
　　72 F.R.D. 201 (N.D. Ill. 1976) ...................................................................................10

*Soulek v. Costco Wholesale Corp. et al.*,
　　Case No. 20-C-937, Dkt. 52  (E.D. Wis. Mar. 17, 2022) ........................................ 10, 16

*Spano v. Boeing Co.*,
　　2016 WL 3791123 (N.D. Ill. Mar. 31, 2016) ...............................................................10

*Surowitz v. Hilton Hotels Corp.*,
　　383 U.S. 363 (1966) ..................................................................................................15

*Toomey v. Demoulas Super Markets, Inc.*,
　　No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) ................8

*Tracey v. M.I.T.*,
　　No. 16-11620, Doc. 157 (D. Mass. Oct. 19, 2018) ......................................................17

*Walmart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011) .............................................................................................12, 13

*Weeks v. JetDirect Aviation, Inc.*,
　　No. 09-10527, 2010 U.S. Dist. LEXIS 111037 (D. Mass. Oct. 19, 2010) ......................17

*Wildman v. Am. Century Servs., LLC*,
　　362 F. Supp. 3d 685 (W.D. Mo. 2019) .........................................................................9

## Statutes

29 U.S.C. § 1132(a)(2) .............................................................................................14, 17
29 U.S.C. §1109(a) ........................................................................................................18

## Other Authorities

Manual for Complex Litigation (Fourth), §13.14 (2004) ....................................................7
Manual for Complex Litigation (Fourth), §21.632 (2004) ..................................................7

Rules

Fed. R. Civ. P. Rule 23(a) ................................................................................... passim
Fed. R. Civ. P. Rule 23(b)(1) .............................................................................. passim
Fed. R. Civ. P. 23(e)(1) ............................................................................................ 11
Fed. R. Civ. P. 23(g) ................................................................................................. 16

Treatises

1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012) ...................................... 15
Restatement (Third) of Trusts, § 100 cmt. (b)(1) ............................................................. 9

Regulations

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830... 7

## INTRODUCTION

Plaintiffs Rodney Barnett and Heather Wolff ("Plaintiffs") submit this Memorandum in support of Plaintiffs' Motion for Preliminary Approval of their class action settlement with Defendants, Iron Mountain Incorporated and Retirement Plan Committee of Iron Mountain Incorporated (collectively, "Defendants"), relating to the management of the Iron Mountain Companies 401(k) Plan ("Iron Mountain Plan").[1]

Under the terms of the proposed Settlement, a Gross Settlement Amount of $850,000.00 will be paid to resolve the claims of Settlement Class Members who participated in the Plan during the Class Period. This is a significant recovery for the Class in relation to the claims that were alleged and falls well within the range of negotiated settlements in similar ERISA cases.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that notices may be disseminated to the class. Among other things:

- The Settlement was negotiated at arm's length with the assistance of a respected mediator;

- The Settlement provides for significant monetary relief that is on par with other settlements;

- The Plan of Allocation conveniently provides for automatic distribution of the settlement proceeds to the accounts of current participants and by check to former participants;[2]

- The Released Claims are tailored to the claims that were asserted, or could have been asserted, in the action;

- The proposed Settlement Class is consistent with the requirements of Rule 23;

- The proposed Settlement Notices provide substantial information to Class Members about the Settlement; and

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit 1** to the accompanying Declaration of Paul M. Secunda ("Secunda Decl.").

[2] The Settlement Class is defined as "[a]ll means all persons who have been participants, beneficiaries and alternate payees of the Plan from May 8, 2018 through the date of the Preliminary Approval Order, except for past and present members of the Committee from May 8, 2018 through the date of the Preliminary Approval Order." Settlement Agreement, §1.47.

- The Settlement provides Class Members the opportunity to raise any objections they may have to the Settlement and to appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notices and authorizing distribution of the Notices to the Settlement Class; (3) certifying the proposed Settlement Class for settlement purposes; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the accompanying Preliminary Approval Order. Defendants do not oppose the relief requested by Plaintiffs' Motion for Preliminary Approval of Settlement, including Plaintiffs' request to certify the Settlement Class as a mandatory, non-opt-out class under Fed. R. Civ. P. 23(b)(1) for settlement purposes only.

## **BACKGROUND**

### I. PLEADINGS

Plaintiffs Rodney Barnett and Heather Wolff filed this action on May 8, 2024 (Dkt. 1), and filed an Amended Complaint on May 13, 2024. Dkt. 4. In their Amended Complaint, Plaintiffs alleged two ERISA violations against Defendants: a violation of the duty of prudence against the Plan Committee under 29 U.S.C. § 1104(a)(1) for paying excessive total recordkeeping and administrative ("RKA") fees to John Hancock and Fidelity Retirement Plan Services ("John Hancock" and "Fidelity");[3] and a claim against Iron Mountain and its Board of Directors for failure to monitor fiduciaries on the Plan Committee with regard to Plan Total RKA fees. *Id.*, ¶5.

Defendants answered the amended complaint on July 23, 2024, denying the allegations in the Amended Complaint and asserting various defenses. Dkt. 17.

---

[3] Fidelity became the Plan recordkeeper effective June 30, 2022. John Hancock, or its predecessor, New York Life whose recordkeeping business it bought in 2015, had been the Plan recordkeeper since at least 2009 to June 2022.

## II.     MEDIATION AND SETTLEMENT

The parties agreed to attempt private mediation before JAMS mediator Stephen Lucke[4] on October 23, 2024. *Declaration of Paul M. Secunda in Support of Motion for Preliminary Approval of Class Action Settlement* ("Secunda Decl."), ¶¶ 10-11, and moved to stay discovery pending mediation on September 5, 2024. Dkt. 22. The Court adopted a discovery schedule through amendments to the pleadings, left the fact discovery deadline open to see where the case would stand after mediation, and ordered the parties to file a status report regarding the outcome of mediation by October 30, 2024. Dkt. 25.

After extensive arm's length negotiations during a full-day mediation, the Parties reached a settlement in principle, signed a settlement term sheet on October 28, 2024, and then prepared the comprehensive Settlement Agreement that is the subject of this motion. *Id.*, ¶ 2. The parties filed a joint status report on October 30, 2024, alerting the Court of the Settlement and asking for a stay of the case until this Motion could be drafted. Dkt. 26.  The Court granted the stay until December 11, 2024, when the motion for preliminary approval of the settlement would be filed. Dkt. 27.

## III.     OVERVIEW OF SETTLEMENT TERMS

### A.     The Settlement Class

The Settlement applies to the following Settlement Class:

> All persons who have been participants, beneficiaries and alternate payees of the Plan from May 8, 2018 through the date of the Preliminary Approval Order, except for past and present members of the Committee from May 8, 2018 through the date of the Preliminary Approval Order.

---

[4] Mr. Lucke is an experienced ERISA practitioner and mediator who has successfully litigated and facilitated the resolution of numerous complex class actions, including ERISA class actions. Secunda Decl., ¶ 11 & Ex. 2.

Settlement Agreement, §1.47. In turn, the Class Period means the period from May 8, 2018 through the date of the Preliminary Approval Order, inclusive. *Id.* § 1.13. There are approximately 34,500 Settlement Class Members, consisting of about 11,500 current Plan participants and 23,000 former Plan participants. Secunda Decl., ¶ 3.

### B.    Monetary Relief

Under the Settlement, Iron Mountain will contribute $850,000 to a Qualified Settlement Fund. Settlement § 1.26. After accounting for (a) Administrative Expenses; (b) reimbursement of expenses incurred by Class Counsel that are awarded by the Court; (c) attorneys' fees to Class Counsel that are awarded by the Court; (d) Case Contribution Award that are awarded by the Court, and (e) a contingency reserve to be set aside by the Settlement Administrator, the Net Settlement Amount will be distributed to eligible Class Members. *Id.* § 1.30.

The Plan of Allocation is Article V of the Settlement Agreement, and sets out the methodology for allocating and distributing the Net Settlement Amount. *Id.*, §§ 5.1-5.14. It is submitted to the Court for approval in connection with the Preliminary Approval of the Settlement. Class Counsel will retain the Settlement Administrator, Analytics Consulting, LLC, to calculate the amounts payable to Settlement Class Members. *Id.* § 1.44.

### C.    Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Claims" as defined in the Settlement) from all claims:

> (a)    "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether involving legal equitable, injunctive, declarative, or any other type of relief (including, without limitation, indemnification or contribution), whether, known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or

4

contingent, liquidated or unliquidated, that have been, could have been, or could be brought by or on behalf of all or any member of the Settlement Class or the Plan at any point prior to the Court's final approval of the Settlement, and that were asserted in the Action, or that might have been asserted in the Action, under any legal or equitable basis related in any way to the Plan, that relate in any way to the fees, use of Plan forfeitures, expenses, investments, investment performance and/or management of the Plan, method of payment of any Plan expense, use of funds in any plan account to pay or not pay Plan expenses, that assert a claim for breach of fiduciary duty or a prohibited transaction against any Plan fiduciary, that relate to the compensation or services of any Plan service provider, that relate to the method of allocating fees among Plan participants, that relate to decisions by the Plan sponsor or any Plan fiduciary with respect to the source of funding used to pay any plan service provider, or that relate to or arise out of the defense or settlement of the Action, including any claim that the Settlement Agreement or any aspect of its implementation violates any applicable law or right of any Settlement Class Member, or that would have been barred by the doctrine of *res judicata* or claim preclusion had the Action been fully litigated to a final judgment.

*Id.*, §1.39.

### D.    Class Notice and Settlement Administration

Class Members will receive notice of the settlement by email or first class mail in both long form and post-card form. Settlement Agreement., §§ 2.1-2.5 & Exs. A & B. To the extent that Class Members would like more information, the Settlement Administrator[5] will establish a Settlement Website on which it will post the Settlement Agreement, Settlement Notice, and relevant case documents, including the Amended Complaint and a copy of all Court orders related to the Settlement. Settlement § 2.4.3 & Exs. A & B. The Settlement Administrator also will establish a toll-free telephone line that will provide the option of speaking with a live operator if callers have questions. *Id.,* § 1.44.

### E.    Attorneys' Fees and Administrative Expenses

The Settlement requires that Class Counsel to file a motion for an award of Attorneys' Fees and Costs at least forty-five (45) calendar days before the Fairness Hearing. *Id.*, § 7.2. Under the

---

[5] Analytics Consulting, LLC has been selected as the Settlement Administrator, and has extensive experience administering similar ERISA class action settlements. Secunda Decl. ¶ 31 & Ex. 3.

Settlement, a case contribution award up to $7,500 may awarded to each of the Class Representatives for their contributions in bringing and litigating the action *Id.,* § 7.1.

### F.    Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Id.,* § 2.1; Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report no later than thirty-five (35) calendar days before the Fairness Hearing. *Id.*, § 2.1.2.

## ARGUMENT

## I.    STANDARD OF REVIEW

The approval of a settlement agreement is a two-step process." *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 97 n.1 (D. Mass. 2010). In the first step, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Id.* at 106–7 (quoting Manual for Complex Litigation (Fourth), §13.14 (2004)). Therefore, a court first makes a "'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id.* at 107 (quoting Manual for Complex Litigation (Fourth), §21.632 (2004)). In making a preliminary determination, courts "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). A presumption of fairness attaches when "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Hochstadt*, 708 F. Supp. 2d at 107 (citing *In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)). Each of those factors is satisfied.

## II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT

### A.    The Settlement Is The Product Of Arm's-Length Negotiations

There is an initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *City P'ship. v. Atlantic Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Settlement is the result of arm's-length negotiations between counsel for all parties in this action, which included a full-day mediation with a neutral mediator with extensive experience resolving similar cases. *See* Secunda Decl., ¶¶ 10-12.

The product of these serious and informed negotiations is a Settlement that provides significant benefits to the Class. The negotiated monetary relief represents a significant portion of the losses demanded by Plaintiffs during mediation. Based on Plaintiffs' estimates, Plaintiffs demanded $4.8 million for excessive RKA fees in the Iron Mountain Plan. Secunda Decl., ¶ 4. Based on this estimate, the $850,000 recovery represents 17.7% of the settlement demand. *Id.* This is on par with numerous other ERISA class action settlements that have been approved across the country.[6]

Consistent with numerous other ERISA settlements that have received court approval,[7] the

---

[6] *See, e.g.*, *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

[7] *See, e.g.*, *Kinder v. Koch Indus., Inc.*, 2021 WL 3360130, at *1–2 (N.D. Ga. July 30, 2021); *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 122-1 § 9 (N.D. Ill. Aug. 6, 2018).

parties have set out a Plan of Allocation in Article V of the Settlement Agreement which is both fair and equitable, and designed to address Plaintiffs' allegations the Plan participants paid excessive fees for RKA services, §§ 5.1-5.14. This method of distribution is both effective and efficient. Under no circumstances will any such payments revert to the Company or any other Defendant. *Id.*, § 5.11.

### B.    The Settlement Was Reached After Informed Negotiations

At the time the settlement was reached, the parties had commenced discovery, but there appeared to be still a chance for settlement. Based on the parties' understanding of the claims in the case after substantial investigation, the parties, fully informed as to the value of the claims and the cost of further litigation, engaged in settlement discussions through a mediator, Stephen Lucke, who also has an expert knowledge of these claims based on 40 years of experience with ERISA claims. As a result of these arms-length mediation discussions, the parties were able to reach an agreement to resolve all the claims in this case.

In the absence of a settlement, Plaintiffs would have faced potential risks. At the time of settlement, there was a risk that the Court might have dismissed the claims on a motion for summary judgment. If the case proceeded to trial, the Defendants still might have prevailed.[8] Finally, even if Plaintiff prevailed on liability, issues regarding Plaintiffs' claimed loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. (b)(1) (determination of losses in breach of fiduciary duty cases is "difficult").

At a minimum, continuing the litigation would have resulted in complex and costly proceedings, and significantly delayed any relief to the Class. ERISA cases such as this can extend

---

[8] *See, e.g.*, *Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

up to a decade before final resolution, sometimes going through multiple appeals.[9] The duration

of these cases is, in part, a function of their complexity, which further weighs in favor of the

Settlement. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17,

2015) (noting that ERISA cases such as this are "particularly complex"); *Koerner v. Copenhaver*,

2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014) ("The facts giving rise to Plaintiffs' claims are

complicated, require the elucidation of experts, and are far from certain.").

    None of this is to say that Plaintiffs lacked confidence in their claims. However, given the

risks and costs of litigation, it was reasonable for Plaintiffs to reach a settlement on these terms.

*See Schulte*, 805 F. Supp. 2d at 582–83; *accord Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill.

1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have

spent a large amount of money, time, and effort.").

### C.    The Proponents of the Settlement are Highly Experienced in Similar ERISA Litigation

    The record reflects that the Class is adequately represented. Class Counsel are experienced

ERISA litigators with a proven track record. Secunda Decl. ¶¶ 25–27. Walcheske & Luzi, LLC

("Walcheske & Luzi"), lead Class Counsel, is a firm recognized for being "experienced in complex

[ERISA] litigation," and having the ability and resources to vigorously prosecute [an] action." *See*

*Soulek v. Costco Wholesale Corp. et al.*, Case No. 20-C-937, Dkt. 52 at 4 (E.D. Wis. Mar. 17,

2022). The Class Representatives are also adequate class representatives, who have diligently

pursued this action on behalf of the Class after acknowledging their duties as class representatives.

*See Declaration of Rodney Barnett in Support of Preliminary Approval of the Settlement* ("Barnett

---

[9] *See, e.g.*, *Spano v. Boeing Co.*, 2016 WL 3791123, at *1, 4 (N.D. Ill. Mar. 31, 2016) (9 years); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (8.5 years); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014) (more than 7 years).

Decl."), ¶¶ 2–4; *Declaration of Heather Wolff in Support of Preliminary Approval of the Settlement* ("Wolff Decl."), ¶¶ 2–4.

It is Class Counsel's opinion that the Settlement is fair and reasonable. Secunda Decl. ¶ 8. As set forth above, the Settlement provides monetary relief in the Gross Amount of $850,000, which, after paying fees and expenses, will be paid to current and former participants of the Plan during the Class Period.

### D. The Settlement is Fair, Reasonable, and Adequate to Warrant Sending Notice to the Settlement Class

Due process and Rule 23(e) do not require that each Class Member receive notice but do require that class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

The proposed forms and methods of notice, which is by email or first-class mail by use of a long-form notice and post-card notice (Settlement, § 2.4, and Ex. A & B), satisfies all due process considerations and meets the requirements of Rule 23(e)(1) because such notice is reasonably calculated to affect actual notice to the Settlement Class which consists of current and former Plan participants. The parties' proposed notices are attached as Exhibits A and B to the Settlement Agreement. The proposed notices, both together and individually, will fully apprise class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including: (i) the terms and operation of the Settlement; (ii) the nature and extent of the release; (iii) the maximum attorneys' fees and costs that will be sought; (iv) the procedure and timing for objecting to the Settlement; (v) the date and place of the fairness

hearing; and (vi) the website on which the full Settlement documents and any modifications thereto will be posted. Settlement Agreement, Exs. A & B.

The notice plan will be implemented in a cost-conscious fashion given the monetary amount of the Settlement. Where available, notice will be distributed to current participant class members via the email address previously provided by them to the Plan recordkeeper for purposes of receiving communications regarding the Plan. For those class members for whom email is unavailable, post-card notice will be sent via first-class mail. Both the email notice and post-card notice will provide key information to participants regarding the settlement, fairness hearing, and objection deadline, and will refer class members to the settlement website, which will contain the long-form settlement notice. This notice will be delivered shortly after entry of the order preliminarily approving the Settlement. Thus, the forms of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate.

## III.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Finally, this Court should certify the Settlement Class for settlement purposes. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff moves for certification under Rule 23(b)(1) of the following settlement class and appointment of Walcheske & Luzi, LLC ("Walcheske & Luzi"), Schneider Wallace Cottrell Konecky Wotkyns LLP ("Schneider Wallace"), and Jonathan Feigenbaum, as Class Counsel:

> All persons who have been participants, beneficiaries and alternate payees of the Plan from May 8, 2018 through the date of the Preliminary Approval Order, except for past and present members of the Committee from May 8, 2018 through the date of the Preliminary Approval Order.

Settlement § 1.47.  In turn, the Class Period means the period from May 8, 2018 through the date of the Preliminary Approval Order, inclusive. *Id.* § 1.13. There are approximately 34,500

Settlement Class Members, consisting of about 11,500 current Plan participants and 23,000 former Plan participants. Secunda Decl., ¶ 3.

To certify the Settlement Class, the Court must find that it satisfies each requirement of Rule 23(a) and at least one subpart of Rule 23(b). *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The standard for certifying a class for settlement purposes is more lenient than that applied in certifying a class for trial, as the Court need not inquire whether the class would be manageable for trial purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**A.     The Proposed Settlement Class Satisfies Rule 23(a)**

Rule 23(a) provides four prerequisites to class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

1)     the class is so numerous that joinder of all members is impracticable;

2)     there are questions of law or fact common to the class;

3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs satisfy each prerequisite for the following reasons.

(1) <u>Numerosity</u>

The proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This is a "low threshold" that is generally met if the number of class members "exceeds 40." *Gordon v. Johnson*, 300 F.R.D. 31, 35 (D. Mass. 2014) ("Although no specific, numerical threshold exists, a class of forty or more is generally sufficient in the First Circuit."); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass 2011). A class of almost 2,000 individuals "would obviously satisfy the numerosity threshold." *Payne v.*

*Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003). Here, the class includes over 34,500 members. Secunda Decl., ¶ 3, and so numerosity is met.

(2) Commonality

The commonality requirement is met when there is at least "a single common question" to the class. *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) (quoting *Dukes*, 564 U.S. at 359). It is "not a difficult one to meet." *Hochstadt*, 708 F. Supp. 2d at 102. Due to the nature of ERISA fiduciary breach claims, "commonality is quite likely to be satisfied." *In re Schering Plough ERISA Litigation*, 589 F.3d 585, 599 n.11 (3d Cir. 2009). Plaintiffs have identified common questions of law and fact that can or would be resolved as to the Plan, not as to any individual participant. Dkt. 4, ¶ 156. In this instance, common questions exist pertaining to the excessive fees associated with Plan RKA fees during the Settlement Class Period, with whether Defendants breached their fiduciary duties to the Plan; and with whether the Plan suffered losses from the alleged fiduciary breaches. Accordingly, commonality is satisfied.

(3) Typicality

Rule 23(a)(3) requires the claims of the class representatives to be typical of the claims of the class. "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Typicality does not require "identical claims." *In re Neurontin Mktg. & Sale Practices Litig.*, 244 F.R.D. 89, 106 (D. Mass. 2007).

In this case, the Named Plaintiffs asserted an identical legal theory on behalf of the Plan under § 1132(a)(2), which arises from the same course of Plan-level conduct: Defendants' alleged imprudent process for selecting and monitoring the Plan's RKA fees during the Settlement Class

Period. If Defendants acted imprudently, they breached their duty to the Plan as a whole, and hence, to all participants. In other words, Plaintiffs allege that all participants during the Class Period were harmed or exposed to harm by the alleged breaches of duty, by being subjected to the same excessive RKA fees and imprudent investments. Each class member, Plaintiffs posit, would have to rely on the same evidence to establish Defendants' liability.

(4) Adequacy of Representation

Rule 23(a)(4) requires the Court to determine that the Class Representatives and their attorneys will adequately represent the class. Fed. R. Civ. P. 23(a)(4). "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F. 2d 124, 130 (1st Cir. 1985). Plaintiffs Rodney Barnett and Heather Wolff (the "Class Representatives") and their attorneys, Walcheske & Luzi, Schneider Wallace, and Jonathan Feigenbaum, satisfy both elements.

a.    Named Plaintiffs are adequate class representatives.

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)). The interests of the Class Representatives are not antagonistic to any class member. Since the damages and remedies pertaining to the claims in this case all go to the Plan, the Class Representatives have the same interest as any of the other proposed settlement-class members: that

is, recovering purported losses for the Plan. Accordingly, no conflict exists between the class representative and the absent class members.

An adequate class representative need only have a basic understanding of the claims and a willingness to participate in the case. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966); *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 369 (N.D. Ill. 2010). The Class Representatives here more than meet this minimum standard. The Class Representatives understand that they are attempting to recover the losses caused by Defendants' alleged unlawful mismanagement of the Plan. Barnett Decl., ¶¶ 2-4; Wolff Decl., ¶¶ 2-4. The Class Representatives understand their duties as class representatives, have provided information necessary for the prosecution of this case, and both indicated their intent to vigorously prosecute this action. *Id*.

> b.    Plaintiffs' attorneys are competent and qualified to represent the Class

In assessing counsel's adequacy to represent the class, courts look to the factors for appointing class counsel under Rule 23(g):

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Walcheske & Luzi, LLC, lead Class Counsel, has extensive experience. Courts have found that Walcheske & Luzi is a firm recognized for being "experienced in complex [ERISA] litigation," and having the ability and resources to vigorously prosecute [an] action." *See Soulek*, Case No. 20-C-937, Dkt. 52 at 4. Walcheske & Luzi also has relevant knowledge to act as Class Counsel. The firm has litigated dozens of ERISA class action cases over the last five years and is one of the few firms in the country with the expertise and experience to do so. Secunda Decl., ¶¶

25-27. Co-counsel, Schneider Wallace, and local counsel, Mr. Feigenbaum, have similar and extensive experience with successfully navigating ERISA class action litigation. *Id.*, ¶¶ 29-30.

### B.    The Proposed Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed Class satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). In both instances, the court is concerned with the problems that would be caused if each potential class member were free to pursue his or her own lawsuit.

The Rule 23 Advisory Committee noted that "an action which charges a breach of trust …by [a] … fiduciary similarly affecting the members of a large class of … beneficiaries" calls for certification under this section. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999)(citing same). Further, due to the "derivative nature" of claims brought under ERISA §502(a)(2) [29 U.S.C. §1132(a)(2)], "breach of fiduciary duty claims brought under §502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class[.]" *Schering*, 589 F.3d at 604 (citing cases).

16

This district has granted class certification under Rule 23(b)(1) in actions brought under 29 U.S.C. §1132(a)(2). *See, e.g., Hochstadt*, 708 F. Supp.2d at 105–06 (Rule 23(b)(1) was "clearly satisfied" given that the "ERISA §502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member"); *Tracey v. M.I.T.*, No. 16-11620, Doc. 157 at 17–18 (D. Mass. Oct. 19, 2018) (certifying a class in an ERISA action under Rule 23(b)(1)); *Weeks v. JetDirect Aviation, Inc.*, No. 09-10527, 2010 U.S. Dist. LEXIS 111037, at *16 (D. Mass. Oct. 19, 2010) (certified settlement class under Rule 23(b)(1)).

Plaintiffs further contend that the proposed Settlement Class can be certified under Rule 23(b)(1)(A) or (B) because "inconsistent or varying adjudications with respect to individual class members…would establish incompatible standards of conduct for the party opposing the class," or "adjudications with respect to individual class members…would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)–(B). The risk of establishing inconsistent standards is particularly strong where, as here, the central element of the prudence claims is not individualized: the fiduciary duties are owed to, and carried out for, the Plan.

Thus, a court adjudicating a suit by an individual plaintiff would determine the issues of the existence of the fiduciary duty and its breach not in relation to the individual plaintiff, but in relation to the entire plan because the fiduciaries' actions are taken as to the plan as a whole. As the Supreme Court stated: "Section 502(a)(2) provides for suits to enforce the liability-creating provisions of §409, concerning breaches of fiduciary duties that harm plans." *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 251 (2008). Plaintiffs contend that this produces not only a

significant risk, but a near certainty that separate actions would establish differing standards for the duty under ERISA owed by the fiduciaries to the Plan. The tremendous number of Plan participants only enhances the likelihood of separate actions producing inconsistent and incompatible results.

In all, the Court should certify the proposed class under Rule 23(b)(1).

**<u>CONCLUSION</u>**

Plaintiffs respectfully request that the Court (1) preliminarily approve the Parties' Class Action Settlement Agreement; (2) approve the proposed Settlement Notices and authorize distribution of the Notices to the Settlement Class; (3) preliminarily certify the Settlement Class for settlement purposes; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Dated this 11th day of December, 2024          Respectfully submitted,

**WALCHESKE & LUZI, LLC**

**<u>s/ Paul M. Secunda</u>**
Paul M. Secunda *(*admitted *pro hac vice)*
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

**SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP**

James A. Bloom
2000 Powell Street
Suite 1400
Emeryville, CA 94608
(415) 421-7100
Email: jbloom@schneiderwallace.com

Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110

18

Telephone: (617) 357-9700
E-Mail: jonathan@erisaattorneys.com

*Attorneys for Plaintiffs and Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 11, 2024, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>*s/Paul M. Secunda*</u>
Paul M. Secunda

20