**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RODNEY BARNETT and HEATHER WOLFF, individually, and as a representative of a Class of Participants and Beneficiaries of The Iron Moutain Companies 401(k) Plan,

Plaintiffs,

v.

IRON MOUTAIN INCORPORATED and RETIREMENT PLAN COMMITTEE OF IRON MOUTAIN INCORPORATED,

Defendants.

Case No. 1:24-cv-11239-GAO

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# Table of Contents

TABLE OF AUTHORITIES ..... ii
INTRODUCTION ..... 1
BACKGROUND ..... 2
I. PROCEDURAL HISTORY ..... 2
A. The Pleadings ..... 2
B. Mediation and Settlement ..... 3
C. Approval of the Settlement ..... 4
II. OVERVIEW OF SETTLEMENT TERMS ..... 4
A. The Settlement Class ..... 4
B. Monetary Relief ..... 4
C. Release of Claims ..... 5
III. CLASS NOTICE AND REACTION TO THE SETTLEMENT ..... 6
IV. REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ..... 7
ARGUMENT ..... 8
I. LEGAL STANDARD ..... 8
II. THE SETTLEMENT WARRANTS FINAL APPROVAL ..... 9
III. THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE ..... 13
IV. THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS ..... 14
CONCLUSION ..... 14
CERTIFICATE OF SERVICE ..... 16

**TABLE OF AUTHORITIES**

**Cases**

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ......................... 7, 9

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ......................... 10

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir.1996) ......................... 7

*Detroit v. Grinell Corp.*,
495 F.2d 488 (2d Cir. 1974) ......................... 7

*Goldberger v. Integrated Res.,*
209 F.3d 43 (2d Cir. 2000) ......................... 1

*Gunter v. Ridgewood Energy Corp.,*
223 F.3d 190 (3d Cir. 2000) ......................... 1

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ......................... 7, 9, 10, 11

*Hughes v. Northwestern Univ.*,
142 S. Ct. 737 (2022) ......................... 2

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ......................... 7, 8

*In re Lupron Mktg. and Sales Prac. Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004) ......................... 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) ......................... 7

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ......................... 8

*In re Solodyn Antitrust Litig.,*
2018 WL 7075881 (D. Mass. July 18, 2018) ......................... 1

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) .......... 7

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......... 11

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) .......... 8, 10

*Schlusselberg v. Colonial Mgmt. Assoc., Inc.*, 389 F. Supp. 733 (D. Mass. 1974) .......... 8

*T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......... 12

*Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) .......... 9

*United States v. Massachusetts,* 869 F. Supp. 2d 189(D. Mass. 2012) .......... 7

*Voss v. Rolland,* 592 F.3d 342 (1st Cir. 2010) .......... 7

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .......... 6

**Rules**

Fed. R. Civ. P. 23(e)(2)(B) .......... 11
Rule 23(b)(1)(A) .......... 12
Rule 23(b)(1)(B) .......... 12
Rule 23(e) of the Federal Rules of Civil Procedure .......... 6, 11

**Regulations**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 .......... 6

# INTRODUCTION

On January 21, 2025, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs Rodney Barnett's and Heather Wolff's ("Plaintiffs") class action claims against Defendants, Iron Mountain Incorporated and Retirement Plan Committee of Iron Mountain Incorporated (collectively, "Defendants"), relating to the management of the Iron Mountain Companies 401(k) Plan ("Iron Mountain Plan")). *See Dkt. 40*. In response to that motion, the Court found that, "[b]ased on this preliminary evaluation, . . . there is cause to believe that: (i) the Settlement Agreement is fair, reasonable, and adequate, and within the range of possible approval, (ii) the Settlement Agreement has been negotiated in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case, (iii) the form of notice of the Settlement and of the Fairness Hearing is appropriate; and (iv) the Settlement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23." *Id.*, ¶ 2. The events following this order confirm that the Settlement is fair, reasonable, and adequate, and warrants final approval.

**First**, an Independent Fiduciary will review the Settlement pursuant to Department of Labor ("DOL") regulations and will independently determine whether the Settlement terms are reasonable. *See Declaration of Paul M. Secunda in Support of Plaintiffs' Motion for Final Approval of Class ActionSettlement ("Second Secunda Decl.")*, ¶ 5. In the report, the Independent Fiduciary will consider whether to affirm, among other things, that: (i) the Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone; (ii) the terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-

length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; (iii) the transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest; and (iv) the Plan of Allocation is reasonable, as well as the request for attorneys' fees and costs, administrative expenses, and the case contribution awards. *Id.* at 3.

**Second**, notice of the Settlement was provided to 25,216 Settlement Class Members, *Declaration of Analytics Consulting, LLC, in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("TPA Decl.")* ¶ 6, and in response, only one objection (on behalf of five Settlement Class Members) was received so far. That objections relates solely to the scope of the Settlement's release. *See id.*, ¶ *6.* The fact that so few class members voiced any concern about the Settlement, and the limited scope of their objections, further demonstrates that the Settlement is fair and reasonable. *See In re Solodyn Antitrust Litig.,* 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000); *Goldberger v. Integrated Res.,* 209 F.3d 43 (2d Cir. 2000)).

Accordingly, Plaintiffs respectfully requests that the Court grant final approval of the Settlement. This motion is unopposed by the Defendants as parties to the Settlement.

## BACKGROUND

### I. PROCEDURAL HISTORY[1]

#### A. The Pleadings

Plaintiffs filed this action on May 8, 2024 (Dkt. 1), and filed an Amended Complaint on May 13, 2024. Dkt. 4. In their Amended Complaint, Plaintiffs alleged two ERISA violations against

[1] The procedural history of this case was previously discussed in connection with Plaintiffs' motion for preliminary approval, Dkt. 29. For ease of reference, Plaintiffs have recounted that history here.

Defendants: a violation of the duty of prudence against the Plan Committee under 29 U.S.C. § 1104(a)(1) for paying excessive total recordkeeping and administrative ("RKA") fees to John Hancock and Fidelity Retirement Plan Services ("John Hancock" and "Fidelity");[2] and a claim against Iron Mountain and its Board of Directors for failure to monitor fiduciaries on the Plan Committee with regard to Plan Total RKA fees. *Id.*, ¶5. Plaintiffs subsequently voluntarily dismissed their claims against the Board of Directors.

Defendants answered the amended complaint on July 23, 2024, denying the allegations in the Amended Complaint and asserting various defenses. Dkt. 17.

**B. Mediation and Settlement**

The parties agreed to attempt private mediation before JAMS mediator Stephen Lucke[3] on October 23, 2024. Dkt. 30, ¶¶ 10-11, and moved to stay discovery pending mediation on September 5, 2024. Dkt. 22. The Court adopted a discovery schedule through amendments to the pleadings, left the fact discovery deadline open to see where the case would stand after mediation, and ordered the parties to file a status report regarding the outcome of mediation by October 30, 2024. Dkt. 25.

After extensive arm's length negotiations during a full-day mediation, the Parties reached a settlement in principle, signed a settlement term sheet on October 28, 2024, and then prepared the comprehensive Settlement Agreement that is the subject of this motion. The parties filed a joint status report on October 30, 2024, alerting the Court of the Settlement and asking for a stay of the

[2] Fidelity became the Plan recordkeeper effective June 30, 2022. John Hancock, or its predecessor, New York Life whose recordkeeping business it bought in 2015, had been the Plan recordkeeper since at least 2009 to June 2022.

[3] Mr. Lucke is an experienced ERISA practitioner and mediator who has successfully litigated and facilitated the resolution of numerous complex class actions, including ERISA class actions. Secunda Decl., ¶ 11 & Ex. 2.

case until this Motion could be drafted. Dkt. 26. The Court granted the stay until December 11, 2024, when the motion for preliminary approval of the settlement would be filed. Dkt. 27.

The preliminary approval motion and supporting documents were filed on December 11, 2024. Dkts. 28-32. The Court preliminarily approved the settlement on January 21, 2025. Dkt. 40, and set the fairness hearing for July 9, 2025. Dkt. 41.

### C. Approval of the Settlement

Plaintiffs are filing the present motion by May 23, 2025, as directed by the Court in the Preliminary Approval Order. Dkt. 40, ¶ 6. To date, only five Settlement Class Members (Arnulfo Melendez, Danielle Bathrick, Joshua Bressler, Kristophor Johnson, and Terrance Mott) out of 25,216 class members have objected to the Settlement terms, and their objection is limited only to the scope of the Settlement release, based on its impact on their later-filed claims in *Melendez, et al. v. Iron Mountain Incorporated, et al.*, No. 1:24-cv-12613 (D. Mass). *Second Secunda Decl.,* ¶ *6.*

## II. OVERVIEW OF SETTLEMENT TERMS

### A. The Settlement Class

The Settlement applies to the following Settlement Class:

> All persons who have been participants, beneficiaries and alternate payees of the Plan from May 8, 2018 through the date of the Preliminary Approval Order, except for past and present members of the Committee from May 8, 2018 through the date of the Preliminary Approval Order.

Settlement Agreement, §1.47. In turn, the Class Period means the period from May 8, 2018 through the date of the Preliminary Approval Order, inclusive. *Id.* § 1.13. Based on data received and reviewed by the Settlement Administrator, there are 25,216 Settlement Class Members. *TPA Decl.* ¶ 7.

### B. Monetary Relief

Under the Settlement, Iron Mountain will contribute $850,000 to a Qualified Settlement

Fund. Settlement § 1.26. After accounting for (a) Administrative Expenses; (b) reimbursement of expenses incurred by Class Counsel that are awarded by the Court; (c) attorneys' fees to Class Counsel that are awarded by the Court; (d) Case Contribution Award that are awarded by the Court, and (e) a contingency reserve to be set aside by the Settlement Administrator, the Net Settlement Amount will be distributed to eligible Class Members. *Id.* § 1.30.

The Plan of Allocation is Article V of the Settlement Agreement, and sets out the methodology for allocating and distributing the Net Settlement Amount. *Id.*, §§ 5.1-5.14. The Court approved Analytics Consulting, LLC, as the Settlement Administrator, to send out notices and to calculate the amounts payable to Settlement Class Members. *Id*. § 1.44; Dkt. 40, ¶ 7.

### C. Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Claims" as defined in the Settlement) from all claims:

> "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether involving legal equitable, injunctive, declarative, or any other type of relief (including, without limitation, indemnification or contribution), whether, known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that have been, could have been, or could be brought by or on behalf of all or any member of the Settlement Class or the Plan at any point prior to the Court's final approval of the Settlement, and that were asserted in the Action, or that might have been asserted in the Action, under any legal or equitable basis related in any way to the Plan, that relate in any way to the fees, use of Plan forfeitures, expenses, investments, investment performance and/or management of the Plan, method of payment of any Plan expense, use of funds in any plan account to pay or not pay Plan expenses, that assert a claim for breach of fiduciary duty or a prohibited transaction against any Plan fiduciary, that relate to the compensation or services of any Plan service provider, that relate to the method of allocating fees among Plan participants, that relate to decisions by the Plan sponsor or any Plan fiduciary with respect to the source of funding

> used to pay any plan service provider, or that relate to or arise out of the defense or settlement of the Action, including any claim that the Settlement Agreement or any aspect of its implementation violates any applicable law or right of any Settlement Class Member, or that would have been barred by the doctrine of *res judicata* or claim preclusion had the Action been fully litigated to a final judgment.

*Id.*, §1.39.

## III. CLASS NOTICE AND REACTION TO THE SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed or emailed Notices of Settlement to each of the 25,216 Settlement Class Members identified by the Plan's recordkeeper on February 21, 2025. *See TPA Decl.* ¶ *8*.

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address Database. *Id.*, ¶ 7. Where Notices were returned or bounced, Analytics re-mailed the Notice to any forwarding address that was provided and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id.* ¶¶ *9-11*. As a result, the notice program was very effective. Out of 25,216 Notices of Settlement that have been emailed or mailed, only 228 (approximately 0.9%) were returned as undeliverable. *Id.*, ¶ 12.

If any Class Members desired further information, Analytics established a Settlement Website at www.IronMountainERISA.com. *Id.* ¶ 13.[4] Analytics also created and maintained a toll-

[4] Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page,each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including, among other things, the Settlement Agreement, Settlement Notices, Former Participant Rollover Form, Amended Complaint, the Court's Preliminary Approval Order, and Plaintiffs' Motion for Approval of Attorneys' Fees and Costs, Administrative Expenses, and Case Contribution Award and related documents); (4) contact information for Class Counsel and the Defendants' Counsel; and (5) email,phone, and U.S. mail contact information for Analytics. *Mitchell Decl.* ¶ *13*.

free telephone support line (844-525-5424) as a resource for Class Members seeking additional information. *Id.*, ¶ 14. This telephone number was referenced in the Notices, and also appears on the Settlement Website. *Id.*

The deadline to submit objections to the Settlement is June 9, 2025. *See* Dkt. 40, ¶ 11. The reaction of the Class to the Settlement has been overwhelmingly favorable. As of the date of this memorandum, there has been only one objection, on behalf of five Settlement Class Members, out of 25,216 Class Members who were sent a Notice of Settlement. The objection by Class Members Arnulfo Melendez, Danielle Bathrick, Joshua Bressler, Kristophor Johnson, and Terrance Mott is limited to the scope of the Settlement release, due to its impact on their later-filed claims in *Melendez, et al. v. Iron Mountain Incorporated, et al.*, No. 1:24-cv-12613 (D. Mass).

Defendants sent the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715 to the appropriate federal and state officials. No objections were received in response to the CAFA notices.

## IV. REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Section 2.1 of the Settlement Agreement and applicable ERISA regulations,[5] the Settlement will be submitted to an Independent Fiduciary (Fiduciary Counselors, LLC) for review following the Court's Preliminary Approval Order. *See Second Secunda Decl., Ex. 1*. Their report is due June 9, 2025. Dkt. 40 , ¶15.

As part of this review, the Independent Fiduciary will personally discuss the Settlement with Class Counsel (and separately with defense counsel and the mediator) by telephone, and subsequently issue a report after the review. *Second Secunda Decl.*, ¶ 5. In the report, the

[5] See Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

Independent Fiduciary will consider whether to affirm, among other things, that: (i) the Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone; (ii) the terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; (iii) the transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest; and (iv) the Plan of Allocation is reasonable, as well as the request for attorneys' fees and costs, administrative expenses, and the case contribution awards. *Id.*

## ARGUMENT

### I. LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. Although the First Circuit has not adopted any single list of factors in approving a settlement, courts in this District often look to the factors articulated by the Second Circuit in *Detroit v. Grinell Corp.*, 495 F.2d 488, 463 (2d Cir. 1974):

> (1) the complexity, expense, and likely duration of litigation, (2) reaction of class to settlement, (3) stage of proceedings and amount of discovery completed, (4) risks of establishing liability, (5) risks of establishing damages, (6) risks of maintaining class action through trial, (7) ability of defendants to withstand greater judgment, (8) range of reasonableness of settlement fund in light of best possible recovery, and (9) range of reasonableness of settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343–44 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015). Other formulations of the final approval inquiry by courts in the First Circuit generally represent variations or abbreviations of the *Grinell* analysis. *See Bezdek*, 79 F. Supp. 3d at 344 (citing

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)). At bottom, these elements "speak to the core question of the reasonableness of the settlement in light of the uncertainties of litigation." *Id.* at 343; *see also United States v. Massachusetts,* 869 F. Supp. 2d 189 (D. Mass. 2012) *(citing Voss v. Rolland,* 592 F.3d 342, 251 (1st Cir. 2010)) ("Before approving a proposed settlement agreement, the Court must determine if the settlement is 'fair, reasonable, and adequate; and not illegal, a product of collusion, or against the public interest.'"). Courts within the First Circuit approach that analysis with the understanding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996).

There is generally a presumption in favor of the settlement if the parties negotiated at arm's-length and were sufficiently informed about the strengths of the claims and defenses, and risks of continued litigation. *See Hochstadt*, 708 F. Supp. 2d at 107 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009)); see also *City P'ship Co.*, 100 F.3d at 1043 ("the law favors class action settlements.").

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

The most relevant factors to the Court's evaluation of the Settlement are: "(1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (citing *In re Compact Disc*, 216 F.R.D. at 206). Perhaps the most important factor is the "likelihood of

success," or "the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." *Schlusselberg v. Colonial Mgmt. Assoc., Inc.*, 389 F. Supp. 733, 735 (D. Mass. 1974). When evaluating this factor, courts are mindful that settlement are born out of compromise. *See Rolland v. Cellucci*, 191 F.R.D. 3, 15 (D. Mass. 2000).

In evaluating the first factor, the Court should also weigh the considerations listed in the sixth factor: the potential "risk, complexity, expense and duration" of the litigation. *In re Relafen*, 231 F.R.D. at 72. At the time the Parties agreed to the Settlement, they had started to exchange discovery materials sufficient to evaluate the strength of the claims and defenses, as well as assess the Plan's alleged losses, and further litigation promised to be lengthy and complex, involving numerous competing experts with regard to recordkeeping fees and other administrative expenses. Defendants likely would have filed a motion for summary judgment and other pretrial motions, including motions concerning the anticipated expert testimony. Thus, Plaintiffs faced meaningful challenges to their ability to obtain a recovery on behalf of the Plan, which strongly supports preliminary approval of the Settlement. *See Rolland*, 191 F.R.D. at 9 (approving a settlement when it was "somewhat doubtful that Plaintiffs could have obtained relief at trial in the comprehensive and detailed manner with which relief is afforded them" through settlement).

First, Plaintiffs and Class Counsel have achieved a favorable result, and have relieved the Class of the burdens and risks of further litigation. *See id.* at 10 ("When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation, there are clearly strong argument for approving a settlement."). Based on Plaintiffs' estimates, the Gross Settlement Amount represents 17.7% of the total amount demanded ($4.8 million) for excessive recordkeeping and administrative (RKA) fees. Dkt. 30, ¶ 4. This is on par with numerous other ERISA class action

settlements that have been approved across the country. *See, e.g., Bezdek,* 79 F. Supp. 3d at 345–46 (approving settlement providing relief amounting to 9% of the alleged price premium measure of damages); *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses).

Second, the reception of the Settlement Class has been overwhelmingly positive. As an initial matter, all Settlement Class members will receive an allocation of Settlement proceeds automatically in their Plan accounts, or as Former Participants receive a check. To date, there has been only one objection (on behalf of five Settlement Class Members), and only to the scope of the Settlement release. *See Second Secunda Decl.*, ¶ 6. Class Counsel have fielded a number of calls and provided information regarding the Settlement and claims process, and none have voiced any opposition to the Settlement. *See Id.,* ¶ 7.

Third, although the Settlement comes at an early stage of the litigation, Class Counsel has extensively developed Plaintiffs' claims on behalf of the Plan and Settlement Class. *See Hochstadt*, 708 F. Supp. 2d at 107 (explaining that "the applicable standard,[] does not require that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement"). Further, "the question is only incidentally answered quantitatively by the number of pages in the documents that were produced or witnesses who were deposed. Rather, the answer must ultimately be a qualitative one: whether the parties conducted sufficient discovery to make an intelligent judgment about settlement." *Id.* Class Counsel conducted substantial investigation and analysis of Plaintiffs' claims, commencing even before the filing of the initial pleading, and, throughout the course of the litigation and settlement efforts, reviewed and analyzed documents pertaining to the Iron Mountain Plan's administration

and Defendants' fiduciary process, including, disclosures made to participants in the Plan. *See Secunda Second Decl.*, ¶ 2. Given this information, it is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate to the Settlement Class. *See Hochstadt*, 708 F. Supp. 2d at 108 (granting preliminary approval to settle a case "at a stage where both the court and counsel are able to evaluate the merits of the claims."). Class Counsel have significant experience litigating ERISA breach of fiduciary duty actions, Dkt. 30, ¶¶ *12-27*, and, although formal discovery has not commenced, the materials collected by Class Counsel and exchanged by the Parties in preparation for mediation enabled them to meaningfully evaluate the merits of Plaintiffs' claims and assess the risks of continued litigation.

Finally, concerning the opinion of competent counsel and the conduct of negotiations, Courts consider class counsel's background and whether the settlement is the result of "negotiation that occurred at arm[']s[-]length." *See In re Lupron Mktg. and Sales Prac. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). The Settlement is the product of an extensive arm's-length process involving an experienced neutral mediator. *See* Dkt. 30, ¶ 10 & Ex. B. Class Counsel and Defendants' counsel are experienced in complex ERISA litigation, thoroughly understand the factual and legal issues involved in the Class Action, and believe the Settlement is fair and reasonable. *Second Secunda. Decl.*, ¶ 3. Thus, these factors weigh strongly in favor of Settlement approval. *See Rolland*, 191 F.R.D. at 10; *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Hochstadt*, 708 F. Supp. 2d at 107 (granting preliminary approval of a settlement reached through arm's-length negotiations).

The Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, and it provides significant relief to the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(B). The Court should therefore find the Settlement is fair, reasonable, and adequate, warranting final approval.

## III. THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE

The class notice program also was reasonable and satisfied the requirements of Rule 23 and due process. As part of the approval process, the Court must direct "reasonable notice" to class members bound by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In the context of a Rule 23(b)(1) class, notice to the class requires "appropriate notice." Fed. R. Civ. P. 23(c)(2)(A). The notice plan approved by the Court and effectuated by the Settlement Administrator clearly meets that standard.

As noted above, the Settlement Administrator sent the Court-approved Settlement Notices to Class Members via email and first-class U.S. Mail. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Further, the record reflects that approximately 99.1% of Notices of Settlement were successfully delivered. *See TPA Decl.* ¶ 12. This confirms the effectiveness of the notice program in this case. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *7 (N.D. Ill. Mar. 25, 2022). In addition, the Notices were accessible to all class members online via the Settlement Website.

Finally, the content of the Notices also was reasonable. These Notices were previously approved by the Court, *see* Dkt. 40, ¶ 8. No Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the Settlement Website, call the toll-free telephone line, contact the Settlement Administrator, or contact Class Counsel. *Second Secunda Decl.,* ¶ *6; TPA Decl., Ex. 1* (distributed Class Notice).

## IV. THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class. Dkt. 40, ¶ 2. In support of preliminary approval, Plaintiffs previously established that: (1) the class is numerous; (2) common issues pertain to all class members; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel are experienced and competent; (6) class certification is appropriate under Rule 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is also appropriate under Rule 23(b)(1)(B) because any individual adjudication would be dispositive of other class members' interests. Dkt. 29 at 17–24. Nothing has changed since the Court preliminarily certified the Settlement Class. Accordingly, the Court should reaffirm its certification of the Class.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant final approval of the settlement and enter the accompanying proposed Final Approval Order.

Dated: May 23, 2025

Respectfully submitted,

s/ Paul M. Secunda
Paul M. Secunda (admitted pro hac vice)
**WALCHESKE & LUZI, LLC**
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
E-Mail: psecunda@walcheskeluzi.com

James A. Bloom (admitted *pro hac vice*)
Todd M. Schneider (admitted *pro hac vice*)
**SCHNEIDER WALLCE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608

Telephone: (415) 421-7100
Fax: (415) 421-7105
jbloom@schneiderwallace.com
tschneider@schneiderwallace.com

Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 357-9700
E-Mail: jonathan@erisaattorneys.com

*Attorneys for Plaintiffs and Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

***/s/ Paul M. Secunda***
Paul M. Secunda