UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RODNEY BARNETT and HEATHER WOLFF, individually, and as a representative of a Class of Participants and Beneficiaries of The Iron Moutain Companies 401(k) Plan,<br><br>Plaintiffs,<br><br>v.<br><br>IRON MOUTAIN INCORPORATED and RETIREMENT PLAN COMMITTEE OF IRON MOUTAIN INCORPORATED,<br><br>Defendants. | Case No.  1:24-cv-11239-GAO |

DECLARATION OF PAUL M. SECUNDA IN OPPOSITION
TO THE OBJECTION TO SCOPE OF RELEASE OF
SETTLEMENT BY MELENDEZ PLAINTIFFS

I, Paul M. Secunda, declare and state as follows:

1.      I am a partner at Walcheske & Luzi, LLC ("Walcheske & Luzi"), and am one of the attorneys of record for Plaintiffs in the above captioned action. I respectfully submit this Declaration in opposition to the objection filed by class members Arnulfo Melendez, Danielle Bathrick, Joshua Bressler, Kristophor Johnson, and Terrance Mott, with regard to the scope of the Settlement Release and whether it covers their later-filed claims they filed on October 15, 2024, in the United States District Court for the District of Massachusetts in *Melendez, et al. v. Iron Mountain Incorporated, et al.*, No. 1:24-cv-12613 (D. Mass).

2.      The Settlement release provision in dispute provides in pertinent part:

> "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether involving legal equitable, injunctive, declarative, or any other type of relief

    (including, without limitation, indemnification or contribution), whether, known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, *that have been, could have been, or could be brought by or on behalf of all or any member of the Settlement Class or the Plan* at any point prior to the Court's final approval of the Settlement, *and that were asserted in the Action, or that might have been asserted in the Action*, under any legal or equitable basis related in any way to the Plan, *that relate in any way to the fees, use of Plan forfeitures, expenses, investments, investment performance and/or management of the Plan, method of payment of any Plan expense, use of funds in any plan account to pay or not pay Plan expenses, that assert a claim for breach of fiduciary duty or a prohibited transaction against any Plan fiduciary*, that relate to the compensation or services of any Plan service provider, that relate to the method of allocating fees among Plan participants, that relate to decisions by the Plan sponsor or any Plan fiduciary with respect to the source of funding used to pay any plan service provider, or that relate to or arise out of the defense or settlement of the Action, including any claim that the Settlement Agreement or any aspect of its implementation violates any applicable law or right of any Settlement Class Member, or that would have been barred by the doctrine of *res judicata* or claim preclusion had the Action been fully litigated to a final judgment.

*Settlement Agreement*, Dkt. 30-1, §1.39 (emphasis added).

   3. As one of the lead Plaintiffs' counsel in this action, I thoroughly investigated and researched potential ERISA breach of fiduciary claims for this case, including so-called Plan forfeiture claims involving breach of fiduciary duty of loyalty claims and breach of ERISA's anti-inurement provision claims, and determined only to bring an excessive recordkeeping and administrative (RKA) fee claim and not any of these forfeiture claims.

   4. My decision was based on my determination that I believed that the excessive RKA fees had a greater chance of success on the merits and the relative value of the excessive RKA fee claims in relation to any potential forfeiture claims.

   5. I also recognize that the excessive RKA fee and forfeiture claims are inextricably related because they both deal with the amount of Iron Mountain Plan RKA expenses and who is responsible for their payment.

6. In other words, the forfeiture allegations involve whether Iron Mountain should have used forfeitures to offset or reduce the Plan recordkeeping fees, which the *Melendez* Plaintiffs claim are excessive. The claims actually brought in this case also involve the fact that Iron Mountain should have reduced RKA fees paid by the Plan, though it did not specifically assert that it should have been done by using Plan forfeitures.

7. Either way, however, the identical factual predicate for both the prudence and forfeiture claims is the assertion that Iron Mountain's administration of the Plan required participants to bear the cost of excessive administrative fees.

8. Contrary to the *Melendez* Plaintiffs' assertions, I did investigate the breach of fiduciary duty of loyalty claims and anti-inurement provision claims as a part of a forfeiture claim, as well as the facts giving rise to such claims, and decided purposefully not to include them in the complaint in this action because I believe the claims I did bring had a better chance of success.

9. As a result, I believe the Settlement Release is appropriate in scope, and covers Iron Mountain Plan forfeiture claims, when it states that Defendants are released from "all actual or potential claims . . . that have been, could have been, or could be brought by or on behalf of all or any member of the Settlement Class or the Plan at any point prior to the Court's final approval of the Settlement, and that were asserted in the Action, or that might have been asserted in the Action, . . . , that relate in any way to the fees, use of Plan forfeitures, expenses, . . ., method of payment of any Plan expense, use of funds in any plan account to pay or not pay Plan expenses, that assert a claim for breach of fiduciary duty or a prohibited transaction against any Plan fiduciary."

10. The *Melendez* Plaintiffs have absolutely no basis whatsoever to argue that

Plaintiffs did not investigate the forfeiture claims. In fact, the *Melendez* Plaintiffs filed his lawsuit without checking that a case was on file, much less contact me to ask why no forfeiture claim was included in the case. The *Melendez* Plaintiffs never identified his case as a related case. If the *Melendez* Plaintiffs had done their due diligence, their objection could have been avoided.

11.   I agreed to mediation of the claims in this action at least a month prior to the filing of the *Melendez* action and did not even know of its existence until after the mediation had concluded.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 23, 2025                                              s/***Paul M. Secunda***
                                                                                   Paul M. Secunda

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/Paul M. Secunda*
Paul M. Secunda