**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RODNEY BARNETT and HEATHER WOLFF, individually, and as a representative of a Class of Participants and Beneficiaries of The Iron Mountain Companies 401(k) Plan,<br><br>   Plaintiffs,<br><br>   v.<br><br>IRON MOUNTAIN INCORPORATED and RETIREMENT PLAN COMMITTEE OF IRON MOUNTAIN INCORPORATED,<br><br>   Defendants. | Case No. 1:24-cv-11239-GAO |

**MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 3

    I.      The Barnett Action ............................................................................................ 3

    II.     The Melendez Action ........................................................................................ 4

Argument ............................................................................................................................... 5

    I.      The Settlement is Fair, Reasonable, and Adequate ........................................... 6

          A.      The Settlement is the product of arm's length negotiation between informed Parties, represented by experienced counsel. ............................. 6

          B.      The Class's reaction to the Settlement favors granting final approval .................................................................................................. 8

          C.      The Settlement was reviewed, and approved, by an independent fiduciary. ................................................................................................. 10

          D.      The Objectors' self-interested desire to pursue a competing class action is not reason to disturb the Settlement. ........................................ 10

    II.     The Settlement's Release Complies With The Identical Factual Predicate Doctrine ........................................................................................................... 11

          A.      The Barnett Plaintiffs can release claims they did not assert ................... 11

          B.      The Barnett and Melendez Actions share an identical factual predicate. ............................................................................................... 14

    III.    The Release's Language—While Broad—Is Consistent With Common Practice, Is a Crucial Part of the Parties' Bargain, and Is Not Reason to Deny Final Approval ...................................................................................... 16

    IV.    Objectors' Forfeiture Claims Fail On Their Face. ........................................... 18

Conclusion .......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. McCurry*,
  449 U.S. 90 (1980)................................................................................................12

*Barragan v. Honeywell Int'l Inc.*,
  No. 24CV4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024) ...............................19

*Bezdek v. Vibram USA, Inc.*,
  809 F.3d 78 (1st Cir. 2015)................................................................................5, 6

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
  85 F.4th 1070 (11th Cir. 2023) ......................................................................12, 17

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. 2:13-CV-20000-RDP, 2022 WL 4587618 (N.D. Ala. Aug. 9, 2022)................................9

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996).......................................................................5, 11, 12, 16

*Cox v. Shah*,
  187 F.3d 629 (4th Cir. 1999) ....................................................................................9

*Dimou v. Thermo Fisher Sci. Inc.*,
  No. 23-CV-1732 TWR (JLB), 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024).......................18

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)....................................................................................8

*Feinberg v. T. Rowe Price Grp.*,
  610 F. Supp. 3d 758 (D. Md. 2022) .......................................................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)............................................................................................19

*Gulbankian v. MW Mfrs., Inc.*,
  No. CIV.A. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014).......................8, 10

*Hill v. State St. Corp.*,
  No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ..................................8

*Hughes v. Northwestern Univ.*,
  63 F.4th 615 (7th Cir. 2023) ................................................................................15

*Hutchins v. HP Inc.*,
    737 F. Supp. 3d 851 (N.D. Cal. 2024) ................................................................19

*Jeff D. v. Andrus*,
    899 F.2d 753 (9th Cir. 1989) ............................................................................9

*Karpik v. Huntington Bancshares Inc.*,
    No. 2:17-CV-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) .........................................10

*In re Lupron Mktg. and Sales Pracs. Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .....................................................................5, 11

*In re Marsh ERISA Litigation*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................10

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996).....................................................................................11

*Minarik Elec. Co. v. Electro Sales Co.*,
    223 F. Supp. 2d 334 (D. Mass. 2022) ..................................................................12

*Mongue v. Wheatleigh Corp.*,
    2024 WL 1659724 (D. Mass. Apr. 16, 2024) ............................................................5

*Monteiro v. Children's Hosp. Corp.*,
    No. 1:22-CV-10069-JEK, 2025 WL 1367413 (D. Mass. May 12, 2025)...........................6, 7

*Naylor v. BAE Sys., Inc.*,
    No. 1:24-CV-00536-AJT-WEF, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024) ......................20

*Nottingham Partners v. Trans-Lux Corp.*,
    925 F.2d 29 (1st Cir. 1991)..................................................................12, 13, 16

*O'Hara v. Diageo-Guinness, USA, Inc.*,
    2021 WL 11749766 (D. Mass. June 28, 2021) ..........................................................5

*Peck v. Air Evac EMS, Inc.*,
    No. CV 5:18-615-DCR, 2020 WL 354307 (E.D. Ky. Jan. 21, 2020)....................................6

*In re Prograf Antitrust Litig.*,
    No. 1:11-MD-02242-RWZ, 2015 WL 13908415 (D. Mass. May 20, 2015)...........................9

*In re Prudential Ins. Litig.*,
    148 F.3d 283 (3d Cir. 1998)..............................................................................11

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)............................................................................9

iii

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...................................................................................13, 14, 15

*Rutman v. Kaminsky*,
   226 A.2d 122 (Del. 1967) ........................................................................................17

*Soderstrom v. MSP Crossroads Apartments LLC*,
   No. CV 16-233 ADM/KMM, 2018 WL 692912 (D. Minn. Feb. 2, 2018) .............................6

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ......................................................................................8

*TBK Partners, Ltd. v. Western Union Corp.*,
   675 F.2d 456 (2d Cir. 1982) ....................................................................................11

*In re Wachovia Corp. ERISA Litig.*,
   2011 WL 13262040 (W.D.N.C. Oct. 24, 2011) ...............................................................10

*Wright v. JPMorgan Chase & Co.*,
   No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642 (C.D. Cal. June 13, 2025) .........................19

318522380v.3

Defendants Iron Mountain Corporation and the Retirement Plan Committee of Iron Mountain Corporation ("Defendants") submit this Memorandum of Law in Response to the Objections to Plaintiffs' Motion for Final Approval of the Class Action Settlement filed by Arnulfo Melendez, Danielle Bathrick, Joshua Bressler, Kristophor Johnson, and Terrance Mott (the "Objectors").

## Introduction

Out of a class of more than 25,000 current and former participants in the Iron Mountain Companies 401(k) Plan (the "Plan"), the Objectors are the only five individuals who have raised objections to the agreement to settle this matter (the "Settlement"). In addition to being Objectors here, these five individuals are also the named plaintiffs and putative class representatives in a pending, later-filed action titled *Melendez, et al. v. Iron Mountain Incorporated, et al.*, No. 1:24-cv-12613 (D. Mass) (the "*Melendez* Action").

Both this action and the *Melendez* Action concern the costs paid by Plan participants to pay for recordkeeping and administrative services to the Plan. In both cases, the plaintiffs contend that the Plan's fiduciaries breached ERISA's duty of prudence by allowing the Plan— and, in turn, Plan participants—to pay excessive fees for those recordkeeping and administrative services. The *Melendez* Action includes additional legal theories as to why the participant-paid fees were excessive; namely, the plaintiffs there contend the Plan fiduciaries allegedly failed to use Plan assets resulting from forfeited participant accounts to offset participant-paid expenses. Those additional legal theories, however, relate to the exact same fees challenged here.

The parties to this action negotiated the Settlement at arm's length during a full-day mediation on October 23, 2024. As the Court is well aware, a settlement can only be set aside at this late stage if the Court finds it is not fair, reasonable or adequate to the Class. The objections fail, as they do not challenge the Settlement based on any of these factors.

At base, the Objectors ask this Court to let them have their cake and eat it too. In the first two words of their brief, they describe themselves as class members in this case, and their objection does not ask the Court to deny approval of the Settlement. Instead, the Objectors ask this Court to approve the Settlement, while modifying the terms of the release to carve out their forfeiture claims. In other words, they want to receive payments under the terms of the Settlement negotiated here (to resolve the excessive fee claims asserted by the *Barnett* Plaintiffs), while simultaneously pursuing different legal theories related to those exact same fees. That cannot happen.

That the Objectors believe they might obtain larger potential recoveries by pursuing additional legal theories not tested here is irrelevant. The question before the Court is not whether other class members could theoretically recover more money than was negotiated in the Settlement, but whether the Settlement is reasonable to the entire class. The objections do not challenge the overall reasonableness of the Settlement, and thus must be overruled.

Moreover, while the objections are based on grounds not relevant to the Court's inquiry, even if considered on the merits they would not provide a basis for disturbing the Settlement. The Objectors assert that the Settlement's release violates the identical factual predicate doctrine, because it is "not limited to any and all claims asserted in the *Barnett* Action." (ECF 43 at 6.) But the identical factual predicate doctrine does not limit releases to only those claims asserted in the action being settled, and review of the cases the Objectors cite supports approval of the Settlement's release.

Objectors also dramatically overstate the value of their forfeiture claims. In reality, the forfeiture claims represent an untested legal theory, on which no court has found a defendant liable. Further, where, as here, the Plan language sets an order of priorities in which forfeited

assets should be used (rather than leaving that order to fiduciary discretion) courts have dismissed forfeiture claims at the pleading stage. The Court should not disturb the Settlement based on the Objectors' speculation that their theories might prove more valuable.

The Objectors' self-interested desire to pursue their lawsuit does not mean that the Settlement reached here is not fair, reasonable, or adequate. The Court should overrule their objections and grant final approval of the Settlement.

## Background

### I.    The *Barnett* Action

Plaintiffs Rodney Barnett and Heather Wolff filed this action on May 8, 2024, and filed the operative, amended complaint on May 13, 2024. (ECF 1, 4.) Plaintiffs assert they are participants in the Plan, and seek to represent a class of other participants on claims asserting Defendants breached their fiduciary duties. (ECF 4 at ¶¶ 1, 5, 154.) Based on information in the Plan's Form 5500 filings, the *Barnett* Plaintiffs allege that the fiduciaries allowed the Plan to pay excessive fees for recordkeeping and other administrative services ("RKA fees"). (*See* ECF 4 at ¶¶ 83–152.) The *Barnett* Plaintiffs support their allegations with the following table, in which they purport to calculate the allegedly excessive fees paid by Plan Participants:

| Total Recordkeeping and Administration (Total RKA) Fees | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Average |
| Participants | 12,524 | 12,192 | 12,088 | 12,372 | 11,474 | 11,474 | *12,021* |
| Est. Total RKA Fees | $655,804 | $856,019 | $879,984 | $1,883,723 | $2,121,585 | $803,180 | *$1,200,049* |
| Est. Total RKA Per Participant | $52 | $70 | $73 | $152 | $185 | $70 | *$100* |
| Reliable Est. of Reasonable Total RKA Fees | $413,292 | $402,336 | $398,904 | $408,276 | $378,642 | $378,642 | *$396,682* |
| Reliable Est. of Reasonable Total RKA Fees Per PP | $33 | $33 | $33 | $33 | $33 | $33 | *$33* |

(ECF 4 at ¶ 87.)

The parties agreed to mediate the *Barnett* action on October 23, 2024, and reached agreement to resolve the matter during that mediation. (ECF 26 at ¶ 4.) The Settlement calls for a

payment of $850,000 to Settlement Class Members. (*See* ECF 30-1 at § 1.26.) In exchange for

that Settlement payment, the *Barnett* Plaintiffs agreed to a release of claims:

> that have been, could have been, or could be brought by or on behalf of all or any
> member of the Settlement Class or the Plan at any point prior to the Court's final
> approval of the Settlement . . . that relate in any way to the fees, use of Plan
> forfeitures, expenses, investments, investment performance and/or management of
> the Plan, method of payment of any Plan expense, use of funds in any plan account
> to pay or not pay Plan expenses, that assert a claim for breach of fiduciary duty or
> a prohibited transaction against any Plan fiduciary, that relate to the compensation
> or services of any Plan service provider, that relate to the method of allocating fees
> among Plan participants, that relate to decisions by the Plan sponsor or any Plan
> fiduciary with respect to the source of funding used to pay any plan service
> provider, or that relate to or arise out of the defense or settlement of the Action,
> including any claim that the Settlement Agreement or any aspect of its
> implementation violates any applicable law or right of any Settlement Class
> Member, or that would have been barred by the doctrine of res judicata or claim
> preclusion had the Action been fully litigated to a final judgment

(*See* ECF 30-1 at § 1.39.)

## II.    The *Melendez* Action

The *Melendez* Action was filed October 15, 2024. (*See* Ex. 1, *Melendez* Compl.) Notably,

by the time the *Melendez* Action was filed, the *Barnett* Parties had already advised this Court of

their intent to mediate the *Barnett* Action. (ECF 25.)

Like the *Barnett* Plaintiffs, the plaintiffs in the *Melendez* Action (*i.e.*, the Objectors) seek

to represent a class of Plan participants, to pursue claims that the Plan fiduciaries "fail[ed] to

control the Plan's RKA costs." (Ex. 1 at ¶ 8.) They further allege that the Plan fiduciaries failed

to "defray[] reasonable expenses of administering the [Plan]," by using forfeited funds in the

Plan to reduce Company contributions to the Plan instead of "using the funds to reduce or

eliminate the amounts charged to Plan participants for RKA services." (Ex. 1 at ¶ 9.)

The Objectors also include a chart in which the purport to calculate, from the Plan's Form

5500 filings, the RKA fees allegedly paid by participants. (Ex. 1 at ¶ 96.) Review of that chart

shows that the RKA fees at issue in *Melendez* are the same as the ones at issue in *Barnett*:

| Year | Participants (PP) | Total RKA Reported | $PP |
|------|-------------------|--------------------|--------|
| 2019 | 12,192 | $856,019.00 | $70.21 |
| 2020 | 12,088 | $879,984.00 | $72.80 |
| 2021 | 12,372 | $1,883,642.00 | $152.25 |
| 2022 | 11,474 | $2,121,585.00[16] | $184.90 |

(*Id.*) The Objectors contend Plan participants should not have paid all or part of these RKA fees.

## Argument

Where parties seek approval of a class action settlement, the court may approve the proposed settlement "only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Mongue v. Wheatleigh Corp.*, 2024 WL 1659724, at *2 (D. Mass. Apr. 16, 2024); *O'Hara v. Diageo-Guinness, USA, Inc.*, 2021 WL 11749766, at *1–2 (D. Mass. June 28, 2021). In reaching those findings, "approval is to be given if a settlement is untainted by collusion and is fair, adequate, and reasonable." *In re Lupron Mktg. and Sales Pracs. Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005).

Courts in the First Circuit presume reasonableness under Fed. R. Civ. P. 23(e)(2) "[i]f the parties negotiated at arm's length and conducted sufficient discovery." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *see also Mongue*, 2024 WL 1659724, at *2.

Here, both the circumstances that produced the Settlement, and the terms of the parties' agreement support overruling the objection and approving the Settlement.

I.      **The Settlement is Fair, Reasonable, and Adequate.**

      A.      *The Settlement is the product of arm's length negotiation between informed Parties, represented by experienced counsel.*

Where—as here—agreement is reached to settle a class action through arm's length negotiations between experienced and capable counsel, after having conducted meaningful discovery, there is a presumption that the settlement is reasonable. *Monteiro v. Children's Hosp. Corp.*, No. 1:22-CV-10069-JEK, 2025 WL 1367413, at *3–4 (D. Mass. May 12, 2025).

Moreover, "[o]nce preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2020 WL 354307, at *3 (E.D. Ky. Jan. 21, 2020). The Court's role is not to assess whether each class member is happy with his or her individual recovery, or whether it provides the best terms available, but instead whether the settlement is within a range of reasonableness to the class as a whole. *Soderstrom v. MSP Crossroads Apartments LLC*, No. CV 16-233 ADM/KMM, 2018 WL 692912, at *7 (D. Minn. Feb. 2, 2018) ("[T]he criteria or methodology employed by the litigants is sufficient if its terms, when applied to the entire group of individuals represented, appear reasonable."). When evaluating a settlement for reasonableness, "the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek v. Vibram USA*, Inc., 809 F.3d 78, 82 (1st Cir. 2015).

Nothing raised by the Objectors overcomes that presumption here. In fact, Objectors' arguments have little to do with the factors required under Federal Rule of Civil Procedure 23(e)(2), and instead center on the argument that they assert legal theories the *Barnett* Plaintiffs did not, and should be allowed to pursue those additional legal theories once this case is over.

The Court should overrule the objections and grant final approval of the Settlement. Before turning to Objector's contentions about the supposed differences between their case and this one, however, examination of the Settlement confirms that it meets the requirements of Fed. R. Civ. P. 23(e)(2), and is fair, reasonable, and adequate.

In this case, the Settlement was reached through arm's length negotiation between parties represented by experienced counsel, working with a qualified mediator, as detailed in Plaintiffs' motion for final approval. (*See* ECF No. 26 at ¶ 4); *Monteiro*, 2025 WL 1367413 at *3 (finding parties negotiated proposed settlement at arm's length where they engaged in extensive discovery, settlement negotiations, and participated in a private mediation before agreeing to settle). Moreover, prior to mediating the case, the *Barnett* Parties had engaged in initial discovery, such that the *Barnett* Plaintiffs were able to value their claims and negotiate for a Settlement payment they believe is both reasonable for this case, and in line with what plaintiffs in other ERISA cases have negotiated. (*See* ECF 29 at 13–14.) Indeed, the percentage of their assessed recovery the *Barnett* Plaintiffs recovered here (17.7%) exceeds the percentage Objectors' counsel has identified as reasonable when seeking settlement approval in other cases. (*See* Ex. 2, *Garcia v. Alticor, Inc.*, Mtn. Final Approval, at 10 (seeking approval of settlement representing 12% of assessed potential recovery).

The proposed settlement here also treats class members equitably, as the apportionment of relief among the class members allocates settlement dollars in proportion to the number of unique calendar quarters for which each class member paid administrative expenses, meaning people who paid more fees generally will receive more from the Settlement. *Monteiro*, 2025 WL 1367413 at *4 (finding proposed ERISA class action settlement treated class members equitably in where each class member's allocation of settlement money is proportionate to harm alleged).

B.      *The Class's reaction to the Settlement favors granting final approval.*

Despite the Objectors' contentions, the degree of opposition to the settlement also weighs in favor of granting approval. Of the 25,216 class members impacted by the Settlement, Objectors are the only five (less than 0.02%) to object to approval of the Settlement. In other words, the reaction of the Class to the Settlement has been overwhelmingly favorable. *See Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) ("Reaction to a settlement is positive when the number of objectors is minimal compared with the number of claimants, provided notice effectively reached absent class members."). The relatively small number of objectors, standing alone, is a factor that weighs in favor of approving the Settlement. *See Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015) (finding a "favorable reaction to class settlement" where a court receives a *de minimis* number of objections, none of which challenge the amount of settlement); *Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) (finding class response positive where .025% of class objected to proposed terms). Indeed, courts have applied this same rationale in response to objection rates multiples of the one here. *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990) (finding that objections filed by "only" twenty-nine of 281 class members (10.32%) favored approval).

That Objectors evidently believe they might be able to extract more value if their forfeiture claims are carved out from the Settlement release. Setting aside, for the moment, the unsupported, speculative nature of these contentions, Objectors' arguments are irrelevant to the Court's task at this stage of the proceedings. Indeed, the release is a material term of the Settlement and cannot be modified by the Court as part of its review of final approval. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("A district court is not a party to

8

the settlement, nor may it modify the terms of a voluntary settlement agreement between parties."); *Cox v. Shah*, 187 F.3d 629 (4th Cir. 1999) ("[T]he district court's power to approve or reject class action settlements under Rule 23(e) of the Federal Rules of Civil Procedure does not permit it to modify the terms of a negotiated settlement"); *Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties.").

In focusing on a request that they be "carved out" of the Settlement's release Objectors also fail to address the sole, dispositive question: whether the Settlement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2). A class action settlement is fair, reasonable and adequate when "the interests of the class are better served if the litigation is resolved by the settlement rather than pursued." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005) (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (emphasis added).

That some class members—including, potentially, the Objectors—might be able to recover more than was negotiated in the Settlement is irrelevant to the question before the Court, because it does not speak to the fairness, reasonableness, or adequacy of the Settlement and fails to account for the risk that, absent settlement, the class (including the Objectors) may get nothing. *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 WL 13908415, at *2 (D. Mass. May 20, 2015) (settlement should be evaluated for "reasonableness in light of the best possible recovery and the risks the parties would have faced if the case had continued to verdicts as to both liability and damages"); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618, at *19 (N.D. Ala. Aug. 9, 2022), *aff'd sub nom. In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070 (11th Cir. 2023) ("In evaluating a proposed settlement, the court is not called upon to determine whether the settlement reached by

the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."). As such, the Court need not proceed any further in analyzing the objections. The objections fail to raise a viable challenge to the Settlement and thus must be overruled.

> C.      The Settlement was reviewed, and approved, by an independent fiduciary.

Further supporting the reasonableness of the Settlement here, it was reviewed—and approved—by an independent fiduciary, who concluded that the terms (including the release) were "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of the claims forgone." (ECF 56-1 at 3.) While not dispositive, the independent fiduciary's determination supports granting final approval. *See In re Wachovia Corp. ERISA Litig.*, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("The independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non-opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy."); *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (same); *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022) (same); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *3 (S.D. Ohio Feb. 18, 2021) (same).

> D.      The Objectors' self-interested desire to pursue a competing class action is not reason to disturb the Settlement.

Finally, all five of the Objectors here are represented by the same attorney, and both the Objectors and their attorney are seeking to represent a class virtually identical to the one proposed here. The Objectors' motives in seeking to preserve some value for their competing class action is a factor the Court should consider in evaluating their objections. *See Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *3 (D. Mass. Dec. 29,

10

2014); *see also In re Lupron*, 228 F.R.D. at 96 (citing *In re Prudential Ins. Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (in assessing the weight of objections to class settlement agreements, the district court may properly consider the fact that the most vociferous objectors were persons enlisted by counsel competing for control of the litigation).

II.    **The Settlement's Release Complies With The Identical Factual Predicate Doctrine.**

A.    *The Barnett Plaintiffs can release claims they did not assert.*

Objectors' only challenge to the Settlement is that it is supposedly overbroad, and releases their so-called "forfeiture" claims, when the allegations in this action did not specifically challenge the use of Plan forfeitures. They claim the release improperly extends to claims that "go beyond the factual basis of the claims asserted in the *Barnett* Action." (ECF 43 at 8.) Stripped of Objectors' conclusory assertions to the contrary, however, the identical factual predicate doctrine plainly permits the release of the *Melendez* Plaintiffs' claims.

Objectors contend "[t]he 'identical factual predicate doctrine' limits a class representative's authority to release claims," and suggest that those limits preclude the use of releases that contain broad language, or cover any claims not directly asserted in the action being settled. (*See* ECF 43 at 10.) Even a cursory review of First Circuit precedent belies this contention. It is settled law in the First Circuit that:

> [I]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)) (emphasis added); *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 377 (1996).

11

Put simply, for the sake of judicial economy, the identical factual predicate doctrine does not handcuff settling parties in the manner Objectors posit, but instead permits the release of any claims—including those asserted, those that could have been asserted, and those that could not have been asserted—so long as the claims "b[ear] a sufficiently close relation" and "stem[] from the same nucleus of operative fact." *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33–34 (1st Cir. 1991). In this way, the identical factual predicate doctrine mirrors the principles of *res judicata*. *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1090 (11th Cir. 2023); *see also Minarik Elec. Co. v. Electro Sales Co.*, 223 F. Supp. 2d 334, 338 (D. Mass. 2022) (employing "same nucleus of operative fact" in the *res judicata* context). And, as the Supreme Court has held, the policy behind *res judicata* is to "relieve parties of the cost and vexation of multiple lawsuits" and "conserve judicial resources." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

The First Circuit has twice applied the identical factual predicate doctrine, both times affirming the validity of a settlement that released claims not asserted in the action being resolved. In *City P'ship Co. v. Atl. Acquisition Ltd. P.ship* (cited by Objectors as supporting their restrictive view of the identical factual predicate doctrine), a class of plaintiffs brought claims based on alleged material misrepresentations and fiduciary breaches in connection with a tender offer. 100 F.3d at 1042–43. The settlement agreement included a broad release of both asserted direct claims and unasserted derivative claims, including any "potential" claims. *Id.* at 1043. Several class members objected to the scope of the release, arguing that releasing unpleaded derivative claims was improper. *Id.* at 1043. The First Circuit rejected this argument, holding that the derivative claims arose from the same factual predicate—the defendant's conduct surrounding the tender offer—and were therefore properly released. *Id.* at 1044.

318522380v.3

Likewise, in *Nottingham Partners*, the plaintiffs brought an individual action in federal court alleging the defendant failed to disclose material facts in a proxy statement. 925 F.2d at 30. Shortly thereafter, another shareholder filed a class action in Delaware state court based on the same proxy statement. *Id.* at 30–31. That later-filed class action settled, and the defendant moved for summary judgment in the federal case, arguing that the claims had been released. *Id.* at 31. The district court granted defendant's motion, and the First Circuit affirmed, holding that while the two actions involved different legal theories and remedies, they were rooted in the same fundamental allegation: nondisclosure in the proxy statement. *Id.* at 33–34. The court concluded, "[t]he two suits, notwithstanding any differences in remedies sought or theories of recovery pleaded, shared a common gravamen." *Id.* at 33.

Objectors cite favorably to several decisions, while ignoring that many of those cases involved courts *approving* settlements that released claims beyond just those asserted in the action being settled. (*See* ECF 43 at 8–10.) Moreover, while nearly half of their citations are to non-binding district court opinions from the Ninth Circuit, Objectors conspicuously omit any reference to the Ninth Circuit's seminal identical factual predicate decision, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006). This omission speaks volumes.

In *Reyn's Pasta Bella*, the Ninth Circuit affirmed dismissal of a class action where plaintiffs attempted to reframe antitrust claims that had already been settled in a prior class action (*Wal-Mart*). In *Reyn's Pasta Bella*, a class of merchants alleged that Visa and other banks engaged in unlawful price-fixing of interchange rates, resulting in excessive merchant-discount fees. *Id.* at 744–45. However, the *Wal-Mart* class action, which at this point was settled, had already alleged that Visa and MasterCard engaged in an anti-competitive conspiracy to control the debit and credit card market, including tying arrangements and interchange rate-fixing, which

inflated the same merchant-discount fees. *Id.* at 745. In other words, the *Wal-Mart* settlement compensated merchants for these overcharges based on the same allegedly inflated fees at issue in *Reyn's Pasta Bella*. *Id.* at 748.

Although the *Reyn's Pasta Bella* plaintiffs advanced a different legal theory—an unlawful coordinated price-fixing scheme as opposed to an unlawful conspiracy to control the debit and credit card market—the Ninth Circuit held that both actions were "predicated on the harm merchants suffered from the elevated interchange fees caused by Defendants' anti-competitive conduct." *Id.* at 749. The court emphasized that the "price-fixing predicate . . . and the underlying injury [were] identical." *Id.* at 749–50. Therefore, the release in *Wal-Mart* barred the *Reyn's Pasta Bella* claims under the identical factual predicate doctrine.

While, like much of Objectors' cited authority, *Reyn's Pasta Bella* is not binding on this Court, that decision illustrates that the identical factual predicate doctrine permits the broad release of unasserted claims that share the same factual predicate allegedly causing the injury. This holds true even where the claims posit distinct legal theories for how the identical factual predicate ultimately caused the injury.

   B. *The Barnett and Melendez Actions share an identical factual predicate.*

Reviewing their respective complaints, it is evident that the Objectors' claims arise from the identical factual predicate as the *Barnett* claims. Both the *Barnett* and *Melendez* Complaints allege that Iron Mountain breached its fiduciary duty of prudence under ERISA by causing Plan participants to incur excessive recordkeeping and administrative ("RKA") fees, thereby lowering their retirement account balances. Both allege those fees were excessive when compared to other plans (an allegation also made in *Melendez*), while the *Melendez* Complaint adds the further theory that the Plan's fiduciaries could have reduced participant-paid RKA fees by using Plan forfeitures to offset participants' obligations. But they are talking about the same bucket of fees

14

causing all alleged injuries, as confirmed by the fact that both complaints include charts in which they identify the very same per-participant RKA fees for the Plan. While the *Melendez* Complaint adds a distinct theory of liability based on the use of Plan forfeitures, both complaints and all alleged injuries arise from the same factual predicate: they allege Iron Mountain's administration of Plan causes participants to pay RKA fees they should not have paid.

Just as in *Reyn's Pasta Bella*, where the plaintiffs attempted to reframe the same alleged overcharge injury under a different legal theory, the Objectors' forfeiture claims simply repackage the alleged harm of paying excessive fees to participate in the Plan under an alternative legal theory. Both Complaints expressly allege that Iron Mountain failed to "defray reasonable expenses of administering the Plan," and both seek redress for the same financial harm, caused by the same defendants, and affecting the same class of individuals during overlapping class periods. (*See* ECF No. 4 at ¶ 171; Ex. 1 ¶ 9.) In short, Objectors' claims, like those in *Reyn's Pasta Bella*, are "predicated on the same harm" and arise from the "same nucleus of operative fact" as *Barnett*.

Seeking to avoid this reality, the *Melendez* Plaintiffs assert that the release of claims relating to the use of Plan forfeitures is improper as the *Barnett* Complaint fails to allege any facts related to Defendants' improper use of forfeited funds. This assertion is without merit. First, while not making express reference to Plan forfeitures, the *Barnett* Complaint does assert claims relating directly to the payment of the exact same fees attacked in *Melendez*. The *Barnett* Complaint alleges that Iron Mountain breached its duty of prudence under ERISA by, among other things, "fail[ing] to take action to mitigate excessive fees" or "adjust[] fee arrangements." *See* ECF 4 at ¶ 14 (quoting *Hughes v. Northwestern Univ.*, 63 F.4th 615, 625–26 (7th Cir. 2023)). And both Complaints allege that Iron Mountain failed to "defray reasonable expenses of

administering the Plan." (*See* ECF No. 4 at ¶ 171; Ex. 1 at ¶ 9.) That Objectors more specifically raised the use of forfeited funds as a means by which those expenses could have been defrayed does not mean their claims arose from a different factual predicate; only that they pleaded a more specific reason for the same alleged injury.

Second, and more importantly, the First Circuit irrefutably recognizes (under the identical factual predicate doctrine) that parties can release unasserted claims, including claims that might not have been presentable in the first action. *City P'ship Co.*, 100 F.3d at 1044. The *Barnett* Plaintiffs explained that they strategically chose not to expressly allege facts related to forfeited funds given the low chance of success and unfavorable facts. (*See* ECF 55 at 3–4.) The identical factual predicate doctrine nevertheless allows for the release of such unasserted claims. Indeed, the doctrine goes farther: it would allow the *Barnett* Plaintiffs to release claims they could not have brought in their action. *See City P'ship Co.*, 100 F.3d at 1044. As the First Circuit held, the purpose of the identical factual predicate doctrine is to "achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action . . . ." *Id.*

### III.   The Release's Language—While Broad—Is Consistent With Common Practice, Is a Crucial Part of the Parties' Bargain, and Is Not Reason to Deny Final Approval.

Objectors further contend that the release is overbroad because it uses "expansive phrases." (ECF 43 at 10.) Contrary to the Objectors' contention that courts "routinely find" such language overbroad, the First Circuit has held that the "generality of the release's phrasing is of no moment." *Nottingham Partners*, 925 F.2d at 33 n.2. This is not to say that any settlement release, however broad, will meet the fair, adequate, and reasonable standard. But assuming the bargained-for settlement agreement otherwise satisfies the requirements of Fed. R. Civ. P. 23(e), "any matter *related to* any of the acts or transactions described in the complaints in the said actions" may be released under the identical factual predicate doctrine. *Nottingham Partners*,

16

925 F.2d at 33 n.2 (quoting *Rutman v. Kaminsky*, 226 A.2d 122, 126 (Del. 1967)) (emphasis

added); *see also In re Blue Cross Blue Shield*, 85 F.4th at 1090 (highlighting regular approval of

settlement agreements releasing claims that are "in any way related" to the factual predicate of

the underlying action).

Notably, Objectors' counsel has repeatedly sought approval of settlements that include

similarly "expansive language" to the Settlement here in cases where he was class counsel. (*See,

e.g.*, Exhibit 3 at § 1.4, *Garcia v. Alticor, Inc.* Settlement (releasing "any and all actual or

potential claims . . . whether accrued or not, whether known or unknown, suspected or

unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act through

the end of the Class Period . . . [t]hat were asserted or could have been asserted in the Class

Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts,

matters, transactions, or occurrences that were alleged or could have been alleged, asserted, or

set forth in the operative Complaint or in any complaint previously filed against

Defendants . . . "); Exhibit 4 at § 1.37, *Hawkins v. Cintas Corp.* Settlement (including claims that

were "known or unknown," "suspected or unsuspected," "asserted," or "alleged, or could have

been alleged" in definition of "Released Claims"); Exhibit 5 at § 1.38, *Rosenkranz v. Altru

Health System* Settlement (same).) Indeed, Objectors' Counsel obtained final approval of similar

language from another judge in this district in February 2025. (*See* Exhibit 6 at § 1.38, *Brown v.

The Mitre Corporation* Settlement.)

It should not come as a surprise that defendants in those other cases—like Defendants

here—insisted on broad language in their settlement. Indeed, obtaining the finality provided by a

broad release is a significant part of the incentive to enter into a class settlement. It is, however,

incongruous for Objectors' counsel to argue for a broad release language when he is seeking

approval of a class settlement, only to claim the same broad language is "routinely [found] to be overbroad" when he was not involved in negotiating it. (*See* ECF 43 at 10 (objecting to the use of phrases "known or unknown" and "suspected or unsuspected' and "asserted or unasserted" in Settlement here, when all three appear in Objectors' counsel's prior settlements).)

The Settlement's release is in line with those approved by other courts—including in cases cited by Plaintiffs—, consistent with language Objectors' counsel has negotiated in other cases, and should not be disturbed.

### IV.     Objectors' Forfeiture Claims Fail On Their Face.

While the merits of Objectors' forfeiture claims are not before this Court, and are not directly relevant to resolution of their objection, it is worth noting both that the value of those claims is untested and that they are unlikely to survive dismissal if litigated.

By way of background, assertion of so-called ERISA "forfeiture claims" began in approximately September 2023, in a suit filed against Thermo Fisher Scientific, Inc.[1] Like the claims in *Melendez*, these forfeiture claims challenge a longstanding practice of using plan forfeitures to offset employer contributions, and claim it is a fiduciary breach, a prohibited transaction, or both to offset employer contributions rather than defray participant expense.[2]

No court has found any defendant liable for the theory pursued in *Melendez*. In addition, several courts have explicitly rejected—as failing to state a claim—the assertion that there is a categorical bar (under either ERISA's fiduciary duty or its prohibited transaction rules) to using plan forfeitures to offset employer contributions rather than participant expenses. *See Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *9 (S.D. Cal. Sept.

---

[1] *See Retirement Plan Forfeitures: A New Wave of Class Action ERISA Litigation*, http://bit.ly/3HY8d6w.

[2] *See A Primer on 401(k) Forfeiture Litigation*, Chubb (Oct. 2024), https://bit.ly/3HR47xb, at 4.

19, 2024) (such a claim is "too broad to be plausible"); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851,

862–63 (N.D. Cal. 2024) (holding such a theory is too broad, and in conflict with the Supreme

Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014)). Courts have

similarly rejected self-dealing and prohibited transaction claims like the one asserted in *Melendez*

for the simple, common-sense reason that, when used to offset employer contributions, the

forfeited assets do not leave the plan, and so do not meet the elements necessary for those claims.

*See, e.g., Barragan v. Honeywell Int'l Inc.*, No. 24CV4529 (EP) (JRA), 2024 WL 5165330, at

*6–7 (D.N.J. Dec. 19, 2024).

      In place of a categorical bar on the use of forfeitures to offset employer contributions

(which has been allowed under IRS regulations since 1963), the decisions on motions to dismiss

forfeiture claims suggest that the plausibility of these claims at the pleading stage turns on plan

language, and can survive dismissal only where the fiduciaries are given unfettered discretion to

use forfeitures as they see fit.

      Here, the Plan language with respect to forfeitures provides:

> Amounts credited to Forfeiture Accounts shall be used first to restore contributions
> of returning Participants, next to make any positive adjustment of contributions and
> earnings thereon determined by the Administrator to be appropriate with respect to
> a Participant's Account, including without limitation, an adjustment pursuant to
> Section 3.7, next to satisfy any contribution liability pursuant to Section 4.5
> (including, without limitation, any earnings thereon) and finally to reduce, but not
> below zero, the contributions described in Section 5.1(b). Notwithstanding the
> preceding sentence, the Administrator may direct that the amounts credited to
> Forfeiture Accounts shall be used to pay appropriate Plan expenses.

(*See* Ex. 7, Plan document, at § 6.4(c).)

      Where, as here, plan language does not give fiduciaries discretion how to use forfeited

assets, courts have dismissed forfeiture claims for failure to state a claim. *See Wright v.*

*JPMorgan Chase & Co.*, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at *4 (C.D. Cal. June

13, 2025) (dismissing forfeiture claim based on lack of discretion in plan); *Naylor v. BAE Sys., Inc.*, No. 1:24-CV-00536-AJT-WEF, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (same).

Defendants recognize that the merits of the Objectors' forfeiture claims are not before this Court, and they do not seek an advisory opinion on those claims. Instead, Defendants raise this authority in response to the Objectors' suggestion that they have strong legal claims independent of anything asserted in this *Barnett* Action, and that Plaintiffs and Class Counsel here could not be adequately representing Objectors in releasing those claims.

To the contrary, review of the Plan language and available precedent on the Objectors' novel, untested claims suggests they are, at a minimum, subject to significant attack at the pleading stage. This reinforces Class Counsel's testimony that he evaluated bringing a forfeiture claim in this action, and elected not to do so based on his assessment of that claim's potential for success. (ECF 55-1 at 3.)

## Conclusion

The Court should overrule the Objectors' objections and grant final approval of the Settlement.

318522380v.3

Dated: June 27, 2025

Respectfully submitted,

*/s/ Ian H. Morrison*
Ian H. Morrison*
imorrison@seyfarth.com
Thomas M. Horan*
**SEYFARTH SHAW LLP**
thoran@seyfarth.com
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Michael E. Steinberg
msteinberg@seyfarth.com
**SEYFARTH SHAW LLP**
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

*Admitted *pro hac vice*

*Attorneys for Defendants*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Ian H. Morrison*

22